IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MARCIA EISENHOUR,<br><br>Plaintiff,<br><br>vs.<br><br>WEBER COUNTY, a political subdivision of the State of Utah, CRAIG D. STOREY, and JAN ZOGMAISTER, in their official and individual capacities,<br><br>Defendants. | MEMORANDUM OPINION AND ORDER<br><br><br><br>Case No. 1:10-CV-22<br>Judge Dee Benson |

In this case, Plaintiff Marcia Eisenhour asserts claims of sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and claims of due process and equal protection violations pursuant to 42 U.S.C. § 1983. In the alternative, Plaintiff makes a claim of intentional infliction of emotional distress. The Defendants include Craig D. Storey ("Defendant Storey"), and Weber County, Utah, and three of its elected officials, Craig Deardon, Kenneth Bischoff, and Jan Zogmaister ("Defendant Weber County").

Presently before the court are Defendant Storey's motion for summary judgment (Dkt. No. 78), Defendant Weber County's motion for summary judgment (Dkt. No. 80), Plaintiff

Eisenhour's motion for partial summary judgment regarding Weber County's ability to raise a Faragher/Ellerth defense (Dkt. No. 84), and a number of motions that are tangential to the above (Dkt. Nos. 82, 120 & 122).

## BACKGROUND

Ms. Eisenhour worked for the Weber County Justice Court for almost 25 years. During most of that time she worked with and for Defendant Story, who served as the only judge on the court. The record reflects that theirs was a friendly and cordial relationship during the vast majority of the time they worked together, from the mid-1980s until approximately 2006, at which point Ms. Eisenhour's father passed away. Whether it was her father's passing or other factors, or a combination of them, Ms. Eisenhour's personality, physical appearance, and attention to her work responsibilities underwent a significant change in the years between 2006 and 2008. Ms. Eisenhour began missing a lot of work and was frequently tardy. Judge Storey, Ms. Eisenhour's direct supervisor, noticed these changes, as did the other court staff, and Judge Storey began to attempt to more closely monitor Ms. Eisenhour's work performance and attendance.

In early July, 2008, Judge Storey required Ms. Eisenhour to explain with specific details why she felt she needed to miss work before he would approve her absences. This led to what turned into a contentious meeting on July 8, 2008, between Judge Storey and Ms. Eisenhour. Ms. Eisenhour became angry and left the meeting to go directly to the Weber County Attorney's Office to complain about Judge Storey. Among her grievances was an allegation that Judge Story had sexually harassed her. Prior to this date, Ms. Eisenhour had never complained to

anyone, publicly or privately, about any such conduct by Judge Storey or Weber County.

After Ms. Eisenhour registered her complaint to Deputy County Attorney Chris Allred, Weber County immediately began an investigation into her allegations. The investigation concluded with a finding of no misconduct on the part of Judge Storey or anyone else. Because Judge Storey was a judge, the matter was further referred to the State of Utah Judicial Conduct Commission ("JCC"), which conducted its own investigation and simultaneously found no misconduct by Judge Storey.

Ms. Eisenhour's complaint against Judge Storey, and by extension, Weber County, consisted of the following allegations, all of which are described in the light most favorable to Ms. Eisenhour:

> 1.) In 2004, or perhaps 2007, Ms. Eisenhour found a poem written about her by Judge Storey. The 11-page poem was located in a credenza under a stack of other papers in the credenza in Judge Storey's office. Ms. Eisenhour came across the poem in either 2004 or 2007, depending on whose version of the story is believed, but it is undisputed that the letter was found no later than 2007. It is further undisputed that Judge Storey did not show the poem to Ms. Eisenhour, nor did he intend for her to see it. The poem contains numerous expressions of the author's attraction to, interest in, and affection for, Ms. Eisenhour. It is further undisputed that prior to her July 8, 2008 meeting with the County Attorney, Ms. Eisenhour had never told Judge Storey she had been looking through the documents in his office credenza, or that she had seen and read the poem, or that she was offended by its contents.
>
> 2.) Ms. Eisenhour claims that on two occasions Judge Storey stood very close to Ms. Eisenhour and rubbed his groin area against her. She claims other people were in the area when he did this. One witness remembers observing the judge standing very closely to Ms. Eisenhour, but no witness, other than Ms. Eisenhour, saw the rubbing incidents. It is undisputed that Ms. Eisenhour did not complain about these incidents to anyone at any time prior to her visit with the Deputy County Attorney on July 8, 2008.
>
> 3.) Ms. Eisenhour claims that when she was attending her father's funeral, Judge Storey called her and said he loved her. She testified that she was not offended by the remark.

      4.) Sometime in 2008, Judge Storey called Ms. Eisenhour into his office and told her that he had had a dream about her being naked.

      5.) Ms. Eisenhour claims that at some time after her divorce in approximately 2007, Judge Storey began to do things to attempt to develop a close personal relationship with Ms. Eisenhour and that when she did not respond favorably to these advances, which included, apparently, the rubbing incidents, he began to treat her differently than before and unfairly. This, she claims, caused her great stress, which let to her physical appearance and personality changes, and contributed to occasional tardies and absences from the workplace. This general theory of what happened is ably articulated by Ms. Eisenhour's attorney, but is supported by very little, if any, specific evidence.

With respect to the investigation conducted by Weber County, Ms. Eisenhour claims it was not properly done. In general, she complains that the investigators did not ask Judge Storey the right questions in sufficient detail.

Ms. Eisenhour's retaliation claim rests on four general complaints: (1) that her return to work was stressful and uncomfortable because she was required to work in the same office with Judge Storey, though physically separated as much as possible; (2) that the County did not properly discipline Judge Storey; (3) that Judge Storey received better treatment than she received in terms of retirement and other employment benefits; (4) that the County permanently closed the Justice Court after her complaint against Judge Storey.

## DISCUSSION

**1.**     **Judge Storey's Motion for Summary Judgment**

Plaintiff asserts two claims against Judge Storey, one for violating her right to equal protection of the law pursuant to 42 U.S.C. § 1983, and, in the alternative, for intentional infliction of emotional distress if Judge Storey is deemed to have acted under color of authority. Both claims are insufficiently supported by fact or by law.

Plaintiff's § 1983 equal protection case against Judge Storey cannot proceed to trial because from the facts offered by Plaintiff, in the light most favorable to her, no reasonable juror could conclude that Judge Storey's actions constituted sexual harassment sufficient to deprive Plaintiff of her equal protection rights under the Fourteenth Amendment.  The facts fail to even remotely constitute proof that Judge Storey acted with the kind of intent necessary to violate Ms. Eisenhour's constitutional rights.  To be liable under § 1983 there must be evidence so show that Judge Storey deliberately deprived Ms. Eisenhour of her equal protection rights.  See City of Canton v. Harris, 489 U.S. 378, 389 (1989).  Here, we have virtually nothing to support such a case.  Section 1983 cannot be predicated upon mere negligence.  Daniels v. Williams, 474 U.S. 327, 31 (1986).  Merely asserting that Judge Storey "should have known" his behavior was unconstitutional, without establishing an intentional, conscious, and deliberate act, falls short of the requisite scienter for § 1983 liability.  Woodward v. City of Warland, 977 F.2d 1392, 1399 & n.11 (10th Cir. 1992).  The undisputed fact that Plaintiff never communicated to Judge Storey or anyone else in the county, or, for that matter, anyone in any capacity, about any offense she may have taken from Judge Storey's behavior, renders her case, already woefully deficient on facts, even less meritorious.

Furthermore, even if there were a basis in fact to support her case, under the circumstances, Judge Storey is also entitled to qualified immunity.

Regarding Plaintiff's alternative claim against Judge Storey for intentional infliction of emotional distress, that claim is deficient for failure to comply with the notice requirements of the Utah Governmental Immunity Act, and for lack of a sufficient factual predicate as stated in

Defendant Storey's brief in support of his motion for summary judgment.

**2.      Plaintiff's Motion for Partial Summary Judgment Regarding a Defense Pursuant to *Faragher v. Boca Raton*.**

Plaintiff claims that a defense pursuant to Faragher v. Boca Raton, 524 U.S. 775 (1998), is not available to Weber County because as Ms. Eisenhour's employer, the County did not exercise reasonable care to prevent and correct promptly any sexually harassing behavior and because the County's investigation of Judge Storey was inadequate. Plaintiff's motion is not well taken. It is undisputed that the County had a program in place, of which Ms. Eisenhour was well aware, for the purpose of encouraging employees to report and obtain relief for harassing behavior. It is further undisputed that Plaintiff failed to timely avail herself of this process. Her complaint about what she perceived as deficiencies in the investigation are insufficient as a matter of law to support her request for summary judgment against the County. Under the circumstances of this case, the County is entitled to defend itself pursuant to the formula set forth in the Faragher case. See Faragher, 524 U.S. at 778.

**3.      Weber County Defendants' Motion for Summary Judgment**

   A.      Title VII

Weber County argues that Plaintiff's Title VII action, based on sexual harassment, is untimely because her EEOC charge was not filed within 300 days of the alleged unlawful employment practice. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10ht Cir. 1997) (concluding district court lacks jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge).

Plaintiff filed her EEOC claim on March 13, 2009; accordingly the 300-day filing period

began on May 17, 2008. The Weber County Defendants claim that all of the events that form the basis of her sexual harassment claim occurred prior to May 17, 2008, and, therefore, her claim was untimely and this court has no jurisdiction to hear her case. Plaintiff responds by arguing that Judge Storey's actions in July 2008 were part of the harassment and therefore her filing was timely. The court disagrees. Plaintiff offers no plausible basis for a connection between Judge Storey's July 2008 actions regarding Plaintiff's absences from the workplace and the sexual harassment of which she complains. The record shows clearly that all of the alleged sexual harassment activity occurred months and in some cases even years before July, 2008. Plaintiff's Title VII sexual harassment claim is, therefore, untimely.

    B. *Faragher/Ellerth*

Weber County claims it is not, in any event, subject to vicarious liability for the sexual harassment committed by a supervisor with immediate authority over the victim employee if the County can prove an affirmative defense as recognized in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998). The defense has two requirements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Faragher</u>, 524 U.S. at 778.

The court agrees that summary judgment is warranted in favor of the County in this case pursuant to <u>Faragher/Ellerth</u>. The facts are without dispute that the County had in place a program that provided sexual harassment prevention training and that made available a means

for reporting any incidents of improper behavior. It is also undisputed that Plaintiff participated in the training and knew how to report objectionable behavior, yet she failed to do so until July 8, 2008, at which time the record clearly shows Weber County acted promptly to stop any harassing behavior and immediately conducted an investigation.

Plaintiff's claim that the requirements of Faragher/Ellerth are not met here because the County's investigation was not properly conducted is factually unsupported and otherwise without a sufficient factual basis to have merit.

C. Retaliation

Plaintiff claims Weber County improperly retaliated against Plaintiff for reporting Judge Storey's alleged sexual harassment to the Weber County Attorney. Her specific claims of retaliation are:

> (1) forcing her to return to work in the same office as Judge Storey,
> (2) stripping her of her supervisory duties,
> (3) limiting her freedom of movement within the court facility and building,
> (4) eliminating her position,
> (5) refusing to allow her to buy out her retirement,
> (6) not putting her on the reappointment register, and
> (7) refusing to consider her for vacancies for which she was qualified.

(Plaintiff's Second Amended Complaint, ¶¶ 52-54.)

Defendant Weber County argues that claims (4) through (7) are based on events that occurred after Plaintiff filed her EEOC complaint on March 19, 2009 and Plaintiff did not file a new EEOC complaint alleging these claims. The County asserts that these claims are, therefore, barred because Plaintiff failed to exhaust her administrative remedies. The court agrees. See, e.g., Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003).

Regarding claims (2) and (3), the County argues that they are barred for lack of jurisdiction because they were not included in Plaintiff's EEOC complaint. Again, the court agrees. (County Defs' Mem. In Supp. Of Summ. J. at 23-25; County Defs' Mem. In Reply at Reply at 61-62.)

Regarding the incident alleged in claim (1), the court agrees with Defendant Weber County that such action fails to meet the definition of an adverse employment act, as explained in Weber County's memorandum in support of its motion for summary judgment. (County Defs' Mem. In Supp. Of Summ. J. at 24.)

Furthermore, although not raised in the briefing, it appears highly doubtful to the court that the Plaintiff has produced sufficient evidence to allow a reasonable fact finder to find a causal connection between the protected activity and the alleged adverse action. The majority of the actions Plaintiff complains of relate to the County's decision to permanently close the Justice Court. The County has presented persuasive evidence that the decision to close the court was wholly unrelated to Plaintiff's report, and Plaintiff has responded with very little, if any, evidence to support her claim that the decision was made in retaliation for her sexual harassment claim. The best she has is timing, and even that is not very close. Her report to the County Attorney occurred in July of 2008, yet the decision to close the justice court was not announced until August 11, 2009, and the court was not closed until March 31, 2010. (Pl.'s Second Am. Compl. ¶¶ 32-33.) Beyond that, her case is virtually devoid of evidence of the necessary causal connection. Besides Plaintiff's untimeliness and failure to exhaust administrative remedies, her retaliation claim appears to amount to nothing more than speculation.

D. Section 1983 Claims

Plaintiff's 42 U.S.C. § 1983 claims against the Weber County Defendants allege violations of Plaintiff's rights under the Equal Protection and Due Process Clauses, and the First Amendment of the United States Constitution. The court finds insufficient factual support for each claim. The Equal Protection Clause is unavailing because Judge Storey is not an official policy maker for Weber County. The Due Process and First Amendment claims are similarly unsuccessful for the reasons stated in Weber County's memorandum in support of its motion for summary judgment. (County Defs' Mem. In Supp. Of Summ. J. at 27-33; County Defs' Mem. In Reply at 63-65.)

E. Whistleblower Claim

Plaintiff's claim under the Utah Protection of Public Employees Act ("Whistleblower Act") is barred as untimely for not being filed "within 180 days after the occurrence of the alleged violation . . . ," Utah Code Ann. § 67-21-4(2), as more fully developed and explained in Weber County's memorandum in support of its motion for summary judgment. (County Defs' Mem. In Supp. Of Summ. J. at 35-36.)

**4.    Other Pending Motions**

Plaintiff's motion to exclude defendants' expert report is denied as moot. The expert's report has not been reviewed by the court or relied upon for the above discussion.

Defendant Weber County's motion to exclude as evidence the deposition transcripts prepared by AVLaw Depot is denied.

Defendants' motion to exclude plaintiff's JCC deposition transcript is granted pursuant to

Utah Code Ann. § 78A-11-112(1).

## CONCLUSION

For the above reasons, Defendant Storey's Motion for Summary Judgment and Defendant Weber County's Motion for Summary Judgment are GRANTED.  Plaintiff Eisenhour's Motion for Partial Summary Judgment is DENIED.  Plaintiff Eisenhour's Motion to Exclude Defendant's Expert is DENIED as MOOT.  Defendants' Motion to Exclude as Evidence the Deposition Transcripts Prepared by AVLaw Depot is DENIED. Defendants' Motion to Exclude Plaintiff's JCC Deposition Transcript is GRANTED.

DATED this 10th day of October, 2012.

Dee Benson
United States District Judge