IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MARCIA EISENHOUR,<br><br>                    Plaintiff,<br><br>          v.<br><br>WEBER COUNTY, a political subdivision of the State of Utah, CRAIG D. STOREY, CRAIG DEARDEN, KENNETH BISCHOFF, and JAN ZOGMAISTER, in their official capacities,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:10-cv-00022<br><br>Judge Clark Waddoups |

Plaintiff Marcia Eisenhour brought a variety of claims against Weber County (the County), three of its county commissioners (the Commissioners), and state Justice Court Judge Craig D. Storey alleging that Judge Storey sexually harassed her and that the County and Commissioners retaliated against her for reporting the harassment. The case proceeded to a jury trial and the defendants unsuccessfully moved for a directed verdict at the conclusion of evidence. The case was submitted to the jury, which concluded that none of the Commissioners were individually liable. But it returned a verdict against the County and Judge Storey on some, but not all, of Ms. Eisenhour's claims and awarded Ms. Eisenhour damages in the amount of $276,503. Judge Storey and the County have now filed renewed motions for judgment as a matter of law on those claims. (Dkt. Nos. 316, 335). In the alternative, they move for a new trial and have asked the court to remit the amount of the jury award. (*Id.*). Ms. Eisenhour opposes the defendants' motions and has asked the court to exercise its authority to award her additional

relief against the County not contemplated by the jury's verdict. (Dkt. No. 311). Finally, she asks the court to award her attorney fees and costs as the prevailing party in the lawsuit. (Dkt. No. 327).

The court held a hearing on the motions and took them under submission. After carefully considering the briefs, record evidence, unofficial trial transcript, arguments of the parties, and relevant authority, the court now grants in part and denies in part the County's motion for judgment as a matter of law, for new trial, and for remittitur. It concludes that the County is entitled to a new trial on Ms. Eisenhour's claims against it. The court also grants in part and denies in part Judge Storey's motion for judgment as a matter of law, for new trial, and for remittitur. The court concludes that Ms. Eisenhour is not entitled to economic damages from Judge Storey but that the remainder of the verdict against him must stand. Finally, the court denies Ms. Eisenhour's request for additional relief from the County and denies Ms. Eisenhour's motion for attorney fees and costs without prejudice to refiling.

## I. BACKGROUND

### A. *Factual Background*

Ms. Eisenhour worked as a court administrator for Judge Storey at the Weber County Justice Court for twenty-four years. The instant case arises out of Ms. Eisenhour's allegations that Judge Storey began acting inappropriately toward her in early 2008. According to Ms. Eisenhour, Judge Storey began invading her personal space and would stand so close to her that his groin rubbed against her body. In addition to this personal contact, Judge Storey once called Ms. Eisenhour into his office and told her that he had a dream about her in which she was in the office break room, naked from the waist up. Ms. Eisenhour claims she was offended by this conversation. Ms. Eisenhour also claims that in 2007 she found a lengthy and mildly erotic

poem in Judge Storey's credenza, which revealed that he had romantic feelings for her. Ms. Eisenhour claims further that, shortly after she found the poem in 2007, Judge Storey handed it to her along with other papers and told her to file them. Ms. Eisenhour believed Judge Storey did so because he intended for her to see the poem.[1]

Ms. Eisenhour asserts that when she did not reciprocate Judge Storey's advances, he subjected her to unreasonable demands about her work and activities. For instance, although she had previously enjoyed flexible hours and the ability to miss work without obtaining prior authorization, Judge Storey told her that this behavior had become a problem. He told her that, in the future, she could not miss work without his approval. Ms. Eisenhour claims that to obtain approval, she would need to tell him where she was going, what she was doing, and with whom she would be. Ms. Eisenhour believed this new policy was possessive and an attempt to control her. Accordingly, she went to the Weber County Attorney's Office and reported Judge Storey's behavior.

The County immediately placed Ms. Eisenhour on paid administrative leave pending an internal investigation. Ultimately, the County concluded that under Utah law it lacked the jurisdiction to resolve complaints against Judge Storey as a member of the judiciary. Thus, it referred Ms. Eisenhour's complaints to Utah's Judicial Conduct Commission (the Commission).[2] Ms. Eisenhour eventually returned to work, becoming part of the Clerk/Auditor's Department so that she would no longer be supervised by Judge Storey. To minimize contact between Judge Storey and Ms. Eisenhour, the County moved Judge Storey's office to a different floor and designated a deputy court clerk as a liaison between the two of them.

---

[1] Other witnesses contradict Ms. Eisenhour's version of events. Ms. Eisenhour's co-workers recall her finding the poem in 2004, not 2007 as Ms. Eisenhour claims. Further, Judge Storey claims that he did not hand her the poem to file.

[2] The Commission is an independent fact-finding body established by Article III, § 13 of the Utah Constitution. The Commission is not subject to the County's governmental authority.

The Commission investigated Ms. Eisenhour's claims, found no misconduct on Judge Storey's part, and dismissed the allegations. Dissatisfied with this result, Ms. Eisenhour went to the press. On August 4 and August 6, 2009, respectively, the Salt Lake Tribune and Ogden Standard Examiner printed articles about Ms. Eisenhour's allegations against Judge Storey. The articles also reported Ms. Eisenhour's dissatisfaction with the Commission's alleged failures to carry out its investigatory obligations. Shortly thereafter, on August 11, 2009, Weber County Deputy Attorney General David Wilson wrote an email to the County Commissioners advising them that Utah law permitted them to merge the Weber County Justice Court with a justice court in another county. The County asserts that this email was part of a series of ongoing discussions related to the financial feasibility of keeping the Justice Court open after consistent and significant decreases in its yearly revenue. But Ms. Eisenhour argues that the County and Commissioners were motivated to close the Weber County Justice Court in retaliation for her decision to report Judge Storey's conduct to the press.

Rumors of the decision to close the Weber County Justice Court began to spread, and Ms. Eisenhour and her co-workers began seeking alternative employment. Ultimately, in March 2010, the County decided to close the Weber County Justice Court and merge it with the Roy Justice Court. By that time, Ms. Eisenhour was one of the few employees who had not yet found another job and was left unemployed. Seven months after the Weber County Justice Court closed, the County hired Ms. Eisenhour to work in its animal control unit at a significant decrease in her hourly wage.

### B. Procedural Background

Ms. Eisenhour filed suit in this court, alleging that Judge Storey sexually harassed her and that the County and Commissioners closed the Weber County Justice Court in retaliation for her reporting the harassment to the local newspapers. Specifically, she asserted claims for violations of Utah's Whistleblower Act, the First Amendment, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and Title VII. The district court[3] granted summary judgment to the defendants on all claims. Ms. Eisenhour appealed this decision to the Tenth Circuit Court of Appeals, which affirmed the decision in part, reversed the decision in part, and remanded the case for trial. The Court agreed that defendants were entitled to summary judgment on the due process and Title VII claims. But as for the First Amendment claim against the County and Commissioners and Whistleblower Act claim against the County, the Tenth Circuit concluded that it was genuinely disputed whether the County closed the Justice Court due to budgetary concerns rather than in retaliation for Ms. Eisenhour's decision to go to the press. In particular, the Court stated that two facts precluded summary judgment on these claims: the close temporal proximity of Mr. Wilson's email and the newspaper articles and, at the time of the closure, the Justice Court was operating at a profit. *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1229–30, 32 (10th Cir. 2014).

The Court also decided that Ms. Eisenhour's claims against Judge Storey of sexual harassment in violation of the Equal Protection Clause survived summary judgment because Ms. Eisenhour's deposition testimony about the poem, dream, and inappropriate touching would permit a reasonable jury to conclude that Judge Storey had intentionally discriminated against her on the basis of her gender in violation of her constitutional right to equal protection. *Id.* at

---

[3] The Honorable Dee V. Benson, presiding.

1234–35. Thus, the Court permitted Ms. Eisenhour's First Amendment claim against the County and Commissioners, the Whistleblower Act claim against the County, and Ms. Eisenhour's equal protection claim against Judge Storey to proceed to trial.[4]

At the close of evidence at trial, the defendants unsuccessfully sought judgment as a matter of law. The court allowed Ms. Eisenhour's claims to go to the jury, which returned a special verdict in Ms. Eisenhour's favor on her Whistleblower Act claim against the County but in favor of the County and Commissioners on her First Amendment claim. It awarded Ms. Eisenhour $33,632 against the County in economic damages for lost earnings and medical insurance benefits. The jury also returned a verdict in Ms. Eisenhour's favor against Judge Storey, concluding that he sexually harassed her in violation of her right to equal protection. It awarded her $58,427 in economic damages for lost earnings and medical insurance benefits, and $184,444 in noneconomic emotional distress damages against Judge Storey. In total, the jury awarded Ms. Eisenhour $276,503. (Dkt. No. 335-1).

Both the County and Judge Storey have now filed renewed motions for judgment as a matter of law, or, in the alternative, for a new trial and for the court to remit the judgment amount. (Dkt. Nos. 316, 335). For her part, Ms. Eisenhour has requested that the court award her additional equitable relief against the County—not contemplated by the jury's verdict—in the form of a raise. (Dkt. No. 311). She also seeks an award of attorney fees and costs as the prevailing party in the lawsuit. (Dkt. No. 327). The court considers each motion in turn.

---

[4] The Honorable Clark Waddoups, presiding.

## II. ANALYSIS

### A. *Weber County's Motions for Judgment as a Matter of Law, for a New Trial, or for Remittitur*

#### 1. **Weber County's Motion for Judgment as a Matter of Law**

Weber County asks the court to grant it judgment as a matter of law that it did not violate the Utah Whistleblower Act when it closed the Justice Court. Specifically, the County asks the court to conclude that, as a matter of law, there was insufficient evidence to support the jury's verdict that it closed the Justice Court because Ms. Eisenhour went to the press. *See* Utah Code Ann. § 67-31-3 ("An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation adopted under the law of this state, a political subdivision of this state, or any recognized entity of the United States"). This argument fails.

"A judgment as a matter of law is warranted only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007) (internal quotation marks omitted).[5] Importantly, in reviewing the record on a judgment as a matter of law, the court cannot "*weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury*. Judgment as a matter of law is appropriate [only] if there is *no legally sufficient evidentiary basis* for a claim under the controlling law." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001) (internal quotation marks omitted). The court is also required to draw all reasonable inferences in favor of the jury verdict. *See Greene v. Safeway Stores, Inc.*, 98

---

[5] In claims involving application of state law, the substantive law of the forum state governs the court's analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question of whether judgment as a matter of law is appropriate. *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006).

F.3d 554, 557 (10th Cir. 1996). Considering the evidence under these standards, the court concludes that Ms. Eisenhour presented at trial a legally sufficient evidentiary basis for her claim under Utah law, drawing all inferences in favor of the verdict.

In reaching this conclusion, the court recognizes that the County presented compelling evidence that the decision to close the Weber County Justice Court was motivated by budgetary concerns rather than Ms. Eisenhour's decision to report the harassment or the Commission's investigative failures to the newspapers. Indeed, the County put on evidence from Weber County Comptroller Dan Olsen who testified that although the court was technically operating at a profit in 2009, it had been steadily losing net revenue in the amount of approximately $200,000 every year. The County also presented evidence indicating that if it did not close the court before Judge Storey were reelected to his position, the County would be required to pay Judge Storey's salary for the full six years of his retention, regardless of whether the court were operational. Thus, the decision to close the court rather than waiting for reelection, even if the court was technically operating at a profit at that time, made good economic sense. Moreover, the County presented evidence that discussions about closing the Justice Court began months before Ms. Eisenhour went to the press with her complaints of Judge Storey and the Commission, greatly minimizing any relevance of the temporal proximity between the newspaper articles and Mr. Wilson's email. Additionally, the Commissioners all testified that the newspaper articles played no role in their decision to close the court and that the decision was motivated exclusively by budgetary concerns. This is all persuasive evidence that the County did not violate the Whistleblower Act. *See Johnson v. City of Murray*, 544 F. App'x 801 (10th Cir. 2013) (rejecting a plaintiff's claim that the city retaliated against her in violation of Utah's Whistleblower Act when the city council decided to outsource the animal control to a neighboring city, thereby terminating the plaintiff's

position, shortly after a newspaper printed an interview with the plaintiff in which she alleged

that her former supervisor had mistreated animals at the shelter, and reasoning that "[w]hile the

decision may have been partially motivated by public relations concerns caused by the article,

the evidence suggests it was as much an economic decision as anything else. Thus, [plaintiff] has

not adequately established that the decision to outsource animal control was made to retaliate

against her for her communication to the newspaper.").[6]

But the problem for the County is that it presented these same arguments and evidence to

the Tenth Circuit, *compare* Dkt. Nos. 335 pp. 27–28, 362 pp. 5–7, *with Appellee Br.* at 13–18,

39, *Eisenhour v. Weber Cty.*, 744 F.3d 1220 (10th Cir. Apr. 11, 2013) (Case No. 12-4190), which

concluded that the close temporal proximity between the newspaper articles and Mr. Wilson's

email, coupled with the fact that the Justice Court was technically operating in the black in 2009,

presented a legally sufficient basis for Ms. Eisenhour's Whistleblower claim to proceed to the

jury as a matter of law.[7] And importantly for the purposes of the instant motion, the evidence as

to these two points was not refuted by any evidence at trial that was not a part of the record on

appeal. Where the Tenth Circuit has concluded that this evidence, even when weighed against

the persuasive evidence presented by the County, would permit a jury to conclude that the

County violated Utah's Whistleblower Act, this court cannot reach a contrary conclusion. *See*

*Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1543 (10th Cir. 1996) (recognizing that

under law of the case doctrine, a trial court may not reconsider a question decided by an

---

[6] Though not binding, the court finds unpublished decisions from the Tenth Circuit to be persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[7] The court recognizes the County's argument that Comptroller Olsen's spreadsheet, which shows that the County was contemplating merger in 2008, minimizes the persuasive value of the temporal relationship between Mr. Wilson's email and the newspaper articles. But the County made this same argument to the Tenth Circuit, *see Appellee Br.* at 14–39–40, *Eisenhour v. Weber Cty.*, 744 F.3d 1220 (10th Cir. Apr. 11, 2013) (Case No. 12-4190), and it was apparently unpersuasive.

appellate court). For this reason, the court is bound by the Tenth Circuit's ruling, which is law of the case, to deny the County's motion for judgment as a matter of law.

### 2. Weber County's Motion for a New Trial

The County argues in the alternative that even if it is not entitled to judgment as a matter of law on Ms. Eisenhour's Whistleblower Act claim, it should be entitled to a new trial. Specifically, the County argues that the jury was obviously confused regarding Ms. Eisenhour's claims against it because it found that the closure of the Weber County Justice Court constituted adverse action for the purposes of the Whistleblower Act claim, but did not constitute adverse action for the purposes of the First Amendment claim. (Dkt. No. 335 p. 30).[8] These inconsistent verdicts, argues the County, require a new trial. The court agrees.[9]

In the Tenth Circuit, an irrevocably inconsistent decision on a special verdict form can present grounds for a new trial. *See Johnson v. ABLT Trucking Co.*, 412 F.3d 1138, 1143 (10th Cir. 2005); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 854 (10th Cir. 2000); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2510 at 207 (West 1995) ("If the jury's answers are inconsistent with each other even when the trial judge views them in the most generous way to avoid such a conclusion, a new trial . . . ordinarily is required."). "To be irreconcilably inconsistent, the jury's answers must be logically

---

[8] As further evidence of jury confusion, the County presents an affidavit from Juror Rich Coombs. Federal Rule of Evidence 606(b) generally prohibits this court from receiving a juror's affidavit consisting of "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment" when inquiring into the validity of a verdict. Jurors may only testify in certain limited circumstances. *See id.* (b)(2) ("A juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form."). The court need not rely on Mr. Coombs' affidavit in concluding that the jury was obviously confused or abused its power. Accordingly, the court does not consider the affidavit further.

[9] Because the inconsistent verdicts appear in a special verdict form, this issue is properly before the court despite the County's failure to raise it before the jury was excused. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 851 (10th Cir. 2000) ("When the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court." (internal quotation marks and brackets omitted)).

incompatible, thereby indicating that the jury was confused or abused its power." *Johnson*, 412 F.3d at 1144 (internal quotation marks and citations omitted). "For example, a verdict that finds (1) no negligence by the defendant and (2) that the defendant's negligence caused the plaintiff's injuries, is facially inconsistent and cannot form the basis of a judgment." *Id.* But before granting a new trial on the basis of any inconsistency, the court must "reconcile the jury's findings, by exegesis if necessary." *Id.* at 1143. "A jury's verdict may not be overturned merely because the reviewing court finds the jury's resolution of different questions in the case difficult, though not impossible, to square." *Id.* at 1144. Applying these principles to the special verdict form here, the court finds the jury's inconsistent findings as to Ms. Eisenhour's First Amendment and Whistleblower Act claims require a new trial on both claims.[10]

Here, with respect to the First Amendment claim, the jury concluded that, as a factual matter, "the closing of the Weber County Justice Court . . . [was not] an adverse action taken against Plaintiff by" Weber County. In contrast, with respect to the Whistleblower Act claim, the jury found that "the closing of the Weber County Justice Court [was] an adverse action taken against plaintiff by Defendant Weber County." (Dkt. No. 335-1, pp. 3, 9). Ms. Eisenhour does not explain, nor can the court can conceive of, any logical way to reconcile these directly contradictory factual findings. The jury was not instructed that there was a different standard for adverse action in the First Amendment versus Whistleblower Act context and the conduct alleged to be adverse—terminating Ms. Eisenhour's position by closing the Justice Court—was identical.

Indeed, under the Whistleblower Act, "'Adverse action' means to discharge, threaten, or discriminate against an employee in a manner that affects the employee's employment, including

---

[10] The County asks for a new trial only on the Whistleblower Act claim. But the court cannot conclude that the Whistleblower Act verdict was the result of jury confusion or abuse of power but the First Amendment verdict was not. Thus, the existence of inconsistent verdicts requires a new trial on both claims.

compensation, terms, conditions, location, rights, immunities, promotions, or privileges." Utah Code Ann. § 67-21-2(2) (emphasis added). By the statute's plain language, the County's closure of the Justice Court—assuming the jury believed the closure was to terminate Ms. Eisenhour's position—would certainly constitute adverse action under the Whistleblower Act.

Similarly, in the First Amendment context, an employer's conduct is adverse if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from engaging in protected free speech activity. *See Duvall v. Putnam City Sch. Dist., Indep. Sch. Dist. No. 1 of Okla. Cty.*, 530 F. App'x 804, 815 (10th Cir. 2013). Unlike the Whistleblower Act, which specifically requires that the action affect the employee's job, the reasonably dissuade standard is broader. It does not require that the discriminatory conduct affect the terms and conditions of the employee's employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (holding that adverse action under Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment"); *Hook v. Regents of Univ. of Ca*, 394 F. App'x 522, 535 (10th Cir. 2010) ("[The Tenth Circuit] consider[s] an employment action to be adverse in the First Amendment retaliation setting if it would deter a reasonable person from exercising his First Amendment rights; [t]his test is identical to the test which is applied in Title VII retaliation claims." (internal quotation marks and citations omitted)). Thus, and importantly for the purposes of this case, it is well settled that "employment action short of discharge may give rise to First Amendment claims." *Gonzales v. Hernandez*, 4 F. App'x 743, 748 (10th Cir. 2001); *accord Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007) ("Actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment." (alterations omitted)). Accordingly, assuming the jury believed that the County closed the Justice

Court to discharge Ms. Eisenhour from her position, as it must have in finding the County liable under the Whistleblower Act, this conduct would also necessarily constitute adverse action for the purposes of the First Amendment. The jury's decision that the County engaged in adverse action in violation of the Whistleblower Act but not in violation of the First Amendment evidences that the jury was confused or abused its power in returning its verdicts against the County. As a consequence, the County is entitled to a new trial on both claims.[11]

### B. *Judge Storey's Motion for Judgment as a Matter of Law, for a New Trial, or for Remittitur*

### 1) **Judge Storey's Motion for Judgment as a Matter of Law**

As does the County, Judge Storey first asks this court to grant him judgment as a matter of law on Ms. Eisenhour's claim that he sexually harassed her in violation of the Equal Protection Clause. To sustain the verdict in favor of Ms. Eisenhour on this claim, there must have been sufficient evidence that: 1) Judge Storey acted under color of state law, 2) he deprived Ms. Eisenhour of a constitutional right, and 3) his actions were the proximate cause of Ms. Eisenhour's injuries and damages. *See Escue v. N. Okla. College*, 450 F.3d 1146, 1157 (10th Cir. 2006). No one disputes that Judge Storey was, at the time of the conduct at issue, acting under the color of state law. But Judge Storey first contends that Ms. Eisenhour failed to present a legally sufficient evidentiary basis for the jury to conclude that he deprived her of a constitutional right. Second, he argues that there is no evidence to show that his actions were the proximate cause of Ms. Eisenhour's damages. The court considers each argument in turn.

#### a. *The Constitutional Right Element*

For the jury to have concluded that Judge Storey deprived Ms. Eisenhour of a constitutional right—here, the right to be free from sex discrimination under the Equal Protection

---

[11] Because the court finds that a new trial is necessary, it need not address the issue of remittitur as to Ms. Eisenhour's damage award against the County.

Clause—Ms. Eisenhour was required to establish that Judge Storey subjected her to sexual discrimination, his conduct was unwelcome, and the conduct was sufficiently severe or pervasive as to interfere with Ms. Eisenhour's working environment. *See id.* Judge Storey contends he is entitled to judgment as a matter of law because Ms. Eisenhour presented no credible evidence at trial to support this element of her claim. When the court considers the evidence under the required legal standards, the court must disagree.

As explained, Judge Storey is entitled to judgment as a matter of law only if "there is *no legally sufficient evidentiary basis* for a claim under the controlling law." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001) (internal quotation marks omitted). Moreover, in considering whether Ms. Eisenhour presented sufficient evidence to support the jury's verdict, the court cannot weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. *See id.* The court is required to draw all reasonable inferences in favor of the jury's verdict. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). Accordingly, when the court assumes, as it must, that the jury believed Ms. Eisenhour's testimony and rejected the contradictory testimony, the court must conclude that she presented legally sufficient evidence of sex discrimination as required by the second element of her equal protection claim.

In particular, Ms. Eisenhour testified that she found the poem that Judge Storey wrote about her in 2007, rather than in 2004 as other witnesses testified, thereafter he handed her the poem along with other papers and told her to file it, he described a dream he had about her in which she was naked from the waist up, and he rubbed his groin against her body. She also testified that this conduct made her feel uncomfortable. Ms. Eisenhour's testimony in this regard, if believed, is sufficient to support her equal protection claim. Indeed, the Tenth Circuit

concluded this same evidence[12] would allow a reasonable jury to conclude that Judge Storey

discriminated against her because of her sex in violation of the Equal Protection Clause. Judge

Storey presents no legal basis that would allow this court to depart from the Tenth Circuit's

holding in this respect, which is, of course, binding. *See Stifel, Nicolaus & Co. v. Woolsey & Co.*,

81 F.3d 1540, 1543 (10th Cir. 1996) (recognizing that a trial court may not reconsider a question

decided by an appellate court). Thus, the court must conclude that Ms. Eisenhour presented at

trial sufficient evidence of a constitutional violation to sustain the jury's verdict against Judge

Storey.

> b. *The Proximate Cause Element*

Judge Storey also challenges the jury's finding as to the third element of Ms. Eisenhour's

sexual harassment claim: whether he was the proximate cause of Ms. Eisenhour's damages.

Although proximate cause is sometimes an amorphous concept, the Tenth Circuit has described

it in this way: "What we mean by the word 'proximate,' one noted jurist has explained, is simply

this: Because of convenience, of public policy, of a rough sense of justice, the law arbitrarily

declines to trace a series of events beyond a certain point." *Lobato v. New Mexico Env't Dep't*,

733 F.3d 1283, 1294–95 (10th Cir. 2013) (alterations omitted); *see also* W. Page Keeton et al.,

*Prosser and Keeton on the Law of Torts* § 41, at 264 (5th ed. 1984) ("As a practical matter, legal

responsibility must be limited to those causes which are so closely connected with the result and

of such significance that the law is justified in imposing liability. Some boundary must be set to

liability for the consequences of any act, upon the basis of some social idea of justice or

policy."). Thus, while an injury may have countless causes, not all should give rise to legal

---

[12] At that time, the evidence was presented in the form of Ms. Eisenhour's deposition testimony, but
Ms. Eisenhour's trial testimony mirrored her deposition testimony in relevant respects. Judge Storey does not direct
the court to any material discrepancies between Ms. Eisenhour's deposition testimony and her trial testimony that
would change the result.

liability. For instance, a plaintiff might assert harms which, although related to the constitutional violation in a but-for sense, are causally too remote from the violation, either because they were not foreseeable or because independent intervening events act to cut off liability for them. *See generally* Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 3:109; *see, e.g.*, *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (holding that in a § 1983 retaliation case, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury; thus, a superseding or intervening cause will break the causal connection). Ordinarily, what constitutes proximate cause is a question of fact for the jury. But where the facts are such that they are susceptible to only one inference, the question is one of law that may be disposed of by the court. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 855 (10th Cir. 2003). Because Judge Storey challenges the evidence of proximate causation as to both Ms. Eisenhour's noneconomic and economic damages, the court considers each damage award in turn.

Turning first to the evidence presented to support Ms. Eisenhour's noneconomic damages, the court finds that Ms. Eisenhour presented at trial legally sufficient evidence to show a causal connection between Judge Storey's conduct and her pain, suffering, and emotional distress damages. The jury believed the testimony and the court must accept it as binding. *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1159 (10th Cir. 1992) ("It is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony."). In particular, Ms. Eisenhour testified that she felt sick inside when she found the poem and that she felt uncomfortable when Judge Storey described his dream about her. She also testified that the situation with Judge Storey caused her anxiety, insomnia, increased weight loss,

and put stress on her marriage.[13] When she returned to work after reporting the harassment,

Ms. Eisenhour claims she felt resentment and hostility from her co-workers and believed that

Judge Storey had turned them against her.

Ms. Eisenhour's testimony of her pain, suffering, and emotional distress was

corroborated by the testimony of her therapist, Dr. Thomas Olsen, who testified that finding the

poem upset Ms. Eisenhour and contributed to her overall stress and depression. He testified

further that, after Ms. Eisenhour reported the sexual harassment to the County, she felt

uncomfortable in the work environment, felt vulnerable at work, and that this stress resulted in

migraines and panic attacks. Dr. Olsen also testified that during this period, Ms. Eisenhour was

experiencing a "moderate to high level of depression," general agitation, nausea, stress, and

diarrhea. His notes reflect that Ms. Eisenhour suffered "headaches, stomachaches, insomnia, and

panic attacks each day at work" because of Judge Storey's conduct. Given this evidence, the

jury's conclusion that Ms. Eisenhour suffered pain, suffering, and emotional distress as a direct

result of Judge Storey's conduct is not unreasonable. Thus, the court must conclude that

Ms. Eisenhour has presented a legally sufficient basis for the award of at least some

noneconomic damages.[14]

The court reaches a different conclusion with respect to the jury's verdict awarding

Ms. Eisenhour economic damages for lost wages and benefits because Ms. Eisenhour presented

at trial no evidence that Judge Storey was the proximate cause of her unemployment. Even under

Ms. Eisenhour's theory of the case, she lost her job and benefits only after and because Weber

---

[13] To be sure, there was evidence that Ms. Eisenhour may have had other life events that might have caused or contributed to her emotional distress. But the jury was free to weigh the evidence and effect of those other potential causes of stress and depression when it concluded that Judge Storey caused Ms. Eisenhour's emotional distress injuries. On a motion for judgment as a matter of law, the court cannot question Ms. Eisenhour's credibility or reweigh that evidence.

[14] The court considers whether the amount of damages is excessive *infra* Section II.B.3.

County closed the Justice Court. Indeed, the undisputed evidence showed that she continued working at the Justice Court at her same salary until its closure. Ms. Eisenhour does not allege, nor was there any evidence, that Judge Storey personally participated in the decision to close the Justice Court or that the County's decision to do so would have been the foreseeable result of his conduct. And importantly, not even Ms. Eisenhour claims that the closure of the Justice Court was the result of Judge Storey's sexual harassment. Instead, she claims it was the result of her decision to report the harassment to the newspapers. Thus, even under Ms. Eisenhour's theory of the case, the chain of events that caused her to lose her job with the County is so far attenuated from Judge Storey's conduct that it was not reasonably foreseeable. Rather, Ms. Eisenhour's decision to go to the press and the alleged resulting closure of the court represent intervening events that break any causal connection between Judge Storey's conduct and Ms. Eisenhour's economic damages. *See Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 687 (2d Cir. 1998) (holding that intervening actions of school district, school board, and disciplinary hearing panel were independent, superseding causes of any injury sustained by teacher, and, thus, because principal's actions were not the proximate cause of teacher's injuries, principal could not be held liable on teacher's § 1983 race discrimination claim). For this reason, the jury's verdict against Judge Storey for Ms. Eisenhour's economic damages cannot stand and he is entitled to judgment as a matter of law as to this damage award.[15]

---

[15] Alternatively, if judgment as a matter of law were not appropriate, Judge Storey would be entitled to a new trial on Ms. Eisenhour's claim for economic damages because the jury's conclusion that Judge Storey was the proximate cause of her economic damages is against the clear weight of the evidence. *See* Fed. R. Civ. P. 50(c)(1) ("If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.").

### 2)  Judge Storey's Motion for a New Trial

Having decided that Judge Storey is not entitled to judgment as a matter of law on Ms. Eisenhour's claim for noneconomic damages resulting from Judge Storey's sex discrimination, the court considers whether Judge Storey is entitled to a new trial. Judge Story presents two grounds that he claims require a new trial: first that the jury's verdict is contrary to the overwhelming weight of the evidence; and second that he was deprived of a fair trial because of Ms. Eisenhour's counsel's conduct during the trial. The court considers, and rejects, both arguments.

*a. The verdict is not against the weight of the evidence.*

Judge Storey first argues that jury's verdict is against the weight of the evidence because 1) Ms. Eisenhour's coworkers testified that she found the poem in 2004, not 2007 as she claims; 2) she did not present evidence that the poem was objectively or subjectively offensive because there was testimony from Ms. Eisenhour's coworkers that she thought it was funny and/or flattering and they laughed about it for years; and 3) there was insufficient evidence that Judge Storey intended to sexually harass Ms. Eisenhour. These arguments are not sufficient to require a new trial.

When "a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence," viewing the evidence in the light most favorable to the jury's verdict. *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1061–62 (10th Cir. 2016). Accordingly, a party seeking a new trial on this basis bears a "heavy burden." *Blanke v. Alexander*, 152 F.3d 1224, 1235 (10th Cir. 1998). "A new trial is not warranted simply because the court would have reached a different verdict." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1248 (Fed. Cir. 1989);

*accord Bruner-McMahon v. Jameson*, 566 F. App'x 628, 635 (10th Cir. 2014) (citing with approval the district court's refusal to substitute its own judgment for that of the jury). Rather, a new trial is warranted only "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Charles Alan Wright, Arthur R. Miller, et al., *Grounds for New Trial—Weight of the Evidence*, 11 Fed. Prac. & Proc. Civ. § 2806 (3d ed.). Considering the evidence presented at trial in this case, the jury's verdict against Judge Storey is not so clearly against the clear weight of the evidence that a new trial is required.

First, although there was contradicting evidence about the date the poem was found, the jury's verdict that Ms. Eisenhour found the poem in 2007 is supported by Ms. Eisenhour's testimony, which the jury elected to believe. Although the jury could have easily credited Ms. Eisenhour's coworkers' recollection that she found the poem in 2004, it chose to credit Ms. Eisenhour's testimony. The jury was free to weigh Ms. Eisenhour's credibility against her coworkers' credibility and determine which version of events to believe. Where there is sharply conflicting evidence that can be reconciled only by judging the credibility of the witnesses, the jury's decision to credit Ms. Eisenhour's testimony is not plainly in error. *See Richardson v. City of Albuquerque*, 857 F.2d 727, 730–31 (10th Cir. 1988) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.") (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

Second, the jury was free to read the poem, consider the dream, and determine whether both were objectively offensive. It was also entitled to believe Ms. Eisenhour's testimony that Judge Storey rubbed his groin against her body and conclude that this was objectively offensive

20

conduct.[16] Similarly, the jury was free to believe Ms. Eisenhour's testimony that this conduct was unwelcome and upsetting. *See Escue*, 450 F.3d at 1157 (explaining that the question of whether conduct is unwelcome turns largely on credibility determinations that are best committed to the trier of fact). And although there was no direct evidence that Judge Storey intended for Ms. Eisenhour to see the poem, it was permissible for the jury to infer such intention from Ms. Eisenhour's testimony that Judge Storey handed the poem to her with other papers and told her to file them. This inference is not unreasonable, nor is there anything to suggest that Judge Storey did not act intentionally when he told her about the dream and rubbed his groin against her body. Thus, although there was evidence contradicting Ms. Eisenhour's testimony, this other evidence was not so compelling that the jury's verdict in Ms. Eisenhour's favor for noneconomic damages against Judge Storey is against the clear weight of the evidence.

### b. The jury's verdict is not the result of prejudice.

Judge Storey's argument that Ms. Eisenhour's counsel's conduct at trial was so prejudicial that it requires a new trial must also be rejected. "Conduct of counsel ordinarily is not grounds for reversal, unless such conduct substantially influences the verdict or denies the defendant a fair trial." *Hoops v. Watermelon City Trucking, Inc.*, 846 F.2d 637, 641 (10th Cir. 1988) (citation and internal quotation marks omitted). Considering the evidence here, the court is not convinced that Ms. Eisenhour's counsel's conduct unfairly influenced the jury's verdict or that Judge Storey was otherwise denied a fair trial.

As evidence of prejudice, Judge Storey claims that Ms. Eisenhour's counsel made repeated references to excluded testimony, resulting in numerous sidebars and causing the trial to go longer than expected, leaving the defendants with less than two days to present their evidence.

---

[16] Although there was some evidence that it would have been difficult for Judge Storey to rub his groin against Ms. Eisenhour's body because of the way the office furniture was configured, this evidence was not so overwhelming that the court can conclude the jury could not reasonably credit Ms. Eisenhour's testimony.

But although Judge Storey faults Ms. Eisenhour's counsel for impermissibly referencing excluded evidence, he makes no effort to explain how this evidence was prejudicial to him. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1212 (10th Cir. 2011) ("An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." (internal quotation marks omitted)). Judge Storey's evidence in support of this argument is weak at best, given that the excluded evidence related largely to Ms. Eisenhour's claims against the County, not him. Similarly, the existence of numerous objections and sidebars, coupled with the fact that the trial went longer than anticipated, was not so prejudicial that it warrants a new trial. Judge Storey does not describe any evidence that he was prevented from introducing because of the trial schedule. Nor does he point to any evidence that would suggest that the jury's verdict was impermissibly based on passion or prejudice rather than fair consideration of the relevant evidence and testimony, a proposition that appears unlikely given Ms. Eisenhour's testimony described above. For these reasons, Judge Storey has not established that Ms. Eisenhour's counsel's conduct necessitates a new trial.[17]

### 3) Judge Storey's Motion for Remittitur

Finally, Judge Storey asks the court to remit the jury's award of noneconomic emotional distress damages in the amount of $184,444 because that amount is "so excessive as to shock the judicial conscience and . . . raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046,

---

[17] This is not to say that the court is unsympathetic to Judge Storey's frustrations with Ms. Eisenhour's counsel's trial techniques or her presentation of evidence. But Judge Storey is entitled to a fair trial, not a perfect trial. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) ("[A] litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials."). While the trial in this case may not have been ideal, Judge Storey was not denied a fair trial.

1062 (10th Cir. 2013) (internal quotation marks omitted).[18] Under existing precedent and the evidence accepted by the jury as true, the court is also required to reject this argument.

In evaluating the jury's award, the court may consider factors such as the severity of the conduct directed at the plaintiff and the context in which it took place, the nature of the harm suffered by the plaintiff, and other economic and convenience factors. *See, e.g.*, *Smith v. NW Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416–17 (10th Cir. 1997). Further, it is appropriate that such analysis should be "informed by a review of awards granted in comparable cases." *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989). But in considering whether the verdict is conscience shocking, the court must be mindful that the valuation of noneconomic emotional distress is not susceptible to proof by set dollar amounts. Thus, the jury's award can be supported by any competent evidence tending to sustain it—even testimony from the plaintiff alone. *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1076 (10th Cir. 2002).

As explained, Ms. Eisenhour presented at trial sufficient evidence to support the jury's conclusion that she suffered pain, suffering, and emotional distress damages as a result of Judge Storey's conduct. And given Ms. Eisenhour and Dr. Olsen's testimony described above, the jury's valuation of Ms. Eisenhour's emotional distress damages does not appear to be the product of passion, prejudice, or corruption rather than fair consideration of the evidence presented. Indeed, although there may have been other potential causes of Ms. Eisenhour's distress, the jury was allowed to consider all of the evidence and determine how much of Ms. Eisenhour's depression, stress, and related physical ailments were the result of Judge Storey's conduct versus

---

[18] Because the court has concluded that the evidence was insufficient to support the jury's award of economic damages in any amount against Judge Storey, the court limits its inquiry to whether remittitur of the noneconomic damage award is appropriate.

any other cause.[19] The court cannot reevaluate this evidence now. *See Prager*, 731 F.3d at 1061–62 ("A district court abuses its discretion in ordering a remittitur when the size of the verdict turns upon conflicting evidence and the credibility of witnesses." (internal quotation marks omitted)). The jury was also allowed to set the dollar amount it believed was necessary to compensate Ms. Eisenhour for the physical and emotional distress it believed Judge Storey caused. *See id.* at 1063 (stating that the jury "is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party"). Although Judge Storey is understandably dissatisfied with such a high figure, he does not explain why this amount is conscience shocking, given Ms. Eisenhour and Dr. Olsen's trial testimony.

Also supporting the jury's award in this case is that it is in accord with amounts awarded in comparable cases. *See, e.g.*, *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1272 (10th Cir. 2000) (concluding that jury award of $295,000 was not excessive against employer for failing to take action to correct sexual harassment consisting of crude language, sexually-oriented jokes and comments, and inappropriate touching); S*mith*, 129 F.3d at 1416 (approving damage award of $200,000 in emotional distress damages where Plaintiff testified that, as a result of sexual harassment, she suffered nausea, migraines, humiliation, degradation, loss of self-respect, sleeplessness, consumption of sleeping pills, frequent crying, loss of a loan officer career, and stress in her relationship with her daughter); *Evans v. Fogarty*, 241 Fed. App'x 542, 561–62 (10th Cir. 2007) (upholding an award of $300,000 in a First Amendment retaliation case); *Baty v. Willamette Indus., Inc.*, 985 F. Supp. 987, 991 (D. Kan. 1997), *aff'd*, 172 F.3d

---

[19] The court rejects Judge Storey's contention that the evidence failed to support that Ms. Eisenhour suffered any actual injury. As explained, she and her therapist presented evidence that she suffered depression, anxiety, insomnia, and weight loss as a result of Judge Storey's conduct. Certainly this is actual injury sufficient to warrant an award of compensatory damages under § 1983. *Cf. Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that in the absence of actual injury, a § 1983 plaintiff can recover only nominal damages).

1232 (10th Cir. 1999) (approving compensatory and punitive damages in the amount of $300,000 where plaintiff testified that as a result of sexual harassment she felt upset, frustrated, humiliated, and embarrassed; that she felt resentment from other employees, including management personnel; that she experienced stress, headaches, and weight fluctuations; that she found it difficult to do her work; and that the harassment had generally "made [her] life hell"); *see also Clawson v. Mountain Coal Co., LLC*, Case No. 01-cv-02199, 2007 WL 4225578, at *2–3 (D. Colo. 2007) (approving award of damages in the amount of $250,000 even where the plaintiff described his emotional distress in "relatively benign" terms). This further supports the conclusion that the jury's award was based on its assessment of the evidence rather than passion, prejudice, or any another improper cause. For these reasons, remittitur of the jury's award of noneconomic damages is not warranted.

### C. Ms. Eisenhour's Motions for Equitable Relief and Attorney Fees and Costs

Ms. Eisenhour asks the court to award her additional equitable relief against the County—not contemplated by the jury's verdict—in the form of a raise. The court denies the motion because it is rendered moot by the court's decision that Weber County is entitled to a new trial on Ms. Eisenhour's claims against it.

Likewise, because the court's ruling that the County is entitled to a new trial and that the economic damage award against Judge Storey must be set aside may affect Ms. Eisenhour's entitlement to some of the attorney fees she seeks, the court denies Ms. Eisenhour's motion for attorney fees but invites her to submit a renewed motion upon completion of the trial, and taking into account this ruling. For the same reason, the court will permit Ms. Eisenhour to submit a renewed bill of costs after the new trial.

## III. CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** the County's renewed motion for judgment as a matter of law, for a new trial, and for remittitur (Dkt. No. 335), **GRANTS IN PART** and **DENIES IN PART** Judge Storey's renewed motion for judgment as a matter of law, new trial, or alter or amend the judgment (Dkt. No. 316); **DENIES** Ms. Eisenhour's motion for equitable relief at moot (Dkt. No. 311), and **DENIES** Ms. Eisenhour's request for attorney fees and costs (Dkt. No. 327) without prejudice to refiling.

SO ORDERED this 1st day of July, 2016.

BY THE COURT:

Clark Waddoups
United States District Judge